James D. MURPHY *v.* Verna L. MURPHY

90-9                                           787 S.W.2d 684

Supreme Court of Arkansas
Opinion delivered April 23, 1990

*Young & Finley*, by: *James K. Young*, for appellant.

*Peel and Eddy*, by: *Richard L. Peel*, for appellee.

TOM GLAZE, Justice. This case involves an alimony dispute. The chancellor granted appellee the divorce based on three years separation without cohabitation, and ordered the appellant to pay alimony to appellee. In making the award, the chancellor noted appellant's military retirement pension, $1,554.00 per month, and then directed appellant to pay $361.00 per month. Due to certain waiver and election provisions under federal law, appellant actually received his entire monthly benefits as disability payments, which are not subject to taxation. In this appeal,

158

appellant contends the trial court erred in requiring him to pay alimony out of his disability benefits, and appellee counters, arguing the trial court may order payment of alimony when such benefits are appellant's only source of funds.

In *McCarty* v. *McCarty*, 453 U.S. 210 (1981), the Supreme Court held that pre-existing federal law completely pre-empted the application of state community property law to military retirement pay. Congress has since enacted the Former Spouses Protection Act (FSPA or Act) to change the legal landscape caused by the *McCarty* decision. That Act and a Supreme Court's recent decision interpreting it, *Mansell* v. *Mansell*, ___ U.S. ___ (1989), 104 L. Ed. 2d 675 (May 30, 1989), are argued by both parties in support of their respective positions.[1]

The FSPA provides that court ordered alimony, child support or division of property payments will be made directly to a former spouse who presents to the secretary of the relevant military branch a state court order granting her a portion of the military retiree's disposable retired or retainer pay. *See* 10 U.S.C. § 1408(d)(1) and (5) (Supp. 1988). The alimony, child support or division of property amounts ordered paid may not exceed fifty percent of the member's disposable retired or retainer pay. 10 U.S.C. § 1408(e)(1) (Supp. 1988). Disposable retired or retainer pay is defined as "the total monthly retired or retainer pay to which a military member is entitled," minus certain deductions. 10 U.S.C. § 1408(a)(4)(B) (1982); *Mansell*, 104 L. Ed. 2d at 682.

In *Mansell*, the Supreme Court had before it a California court order that treated the retiree's disability benefits as community property. After reviewing the FSPA, the Court stated that, in the face of the FSPA's plain and precise language, state courts have been granted the authority to treat *disposable* retired pay as community property, but they have not been granted the authority to treat *total* retired pay as community property. In this same vein, the court held that the FSPA does not grant state courts the power to treat, as property divisible upon divorce, military retirement pay that has been waived to receive veterans disability

---

[1] The case reviewed by the *Mansell* court involved California community property law, but the court noted its decision covers equitable distribution states as well.

benefits.[2]

■ In view of the Court's decision in *Mansell*, the appellee here is clearly not entitled to direct payments for alimony under the FSPA because the appellant has no disposable retired pay as defined under that Act. In fact, appellant's disability benefits are not only unavailable to appellee for alimony payments under the FSPA, but also they are subject to the strictures of the anti-attachment provision of 38 U.S.C. § 3101(a) once appellant actually receives his benefits. *See Jones* v. *Goodson*, 299 Ark. 495, 772 S.W.2d 609 (1989) [where the trial court held certain certificates of deposit purchased with veteran benefits were exempt from garnishment under 38 U.S.C. § 3101(a)]. Even so, such conclusions do not preclude the trial court from ordering appellant to pay alimony, and once awarded, the FSPA does not relieve a retiree from paying such alimony obligations. *See* 10 U.S.C. § 1408(d)(6) (1982).

■ In challenging the court's alimony award, appellant argues he, not appellee, was the injured party, and besides, appellee had received alimony during their four years separation and therefore had had ample opportunity to rehabilitate herself for employment purposes. Of course, the relative fault of the parties is no longer a factor unless it meaningfully relates to need or ability to pay. *Russell* v. *Russell*, 275 Ark. 193, 628 S.W.2d 315 (1982). Here, the parties have traded charges of infidelity and appellant also testified the appellee tried to kill him with an ax. The chancellor obviously concluded that none of the alleged misconduct related to need or ability to pay and from our review of the evidence presented, we agree.

---

[2] It is noteworthy to mention the strong dissent issued by Justice O'Conner who criticized the court's construction of the Act by stating, "To read the statute as permitting a military retiree to pocket 30 percent, 50 percent, even 80 percent of gross retirement pay by converting it into disability benefits and thereby to avoid his obligations under state community property law, however, is to distort beyond recognition and to thwart the main purpose of the statute, which is to recognize the sacrifices made by military spouses and to protect their economic security in the face of a divorce." Justice O'Conner concluded by mentioning that since the retiree can waive retirement pay in lieu of disability benefits so as to avoid the Act's direct payment mechanism, the former spouse is relegated to other state processes that cannot directly attach the retiree's benefits given the strictures of the anti-attachment provision of 38 U.S.C. § 3101(a).

Concerning appellant's claim that appellee has had time to rehabilitate herself for employment, we note the evidence that appellee was a housewife for thirty-four years (twenty-eight years of which were when the parties were in the military service), has only a tenth grade education, has failed the G.E.D. test three times, has diabetes, a bad back and possibly a tumor.[3] Considering these factors, along with the fact appellee has only nominal income, we believe the chancellor was well within his discretion to decide appellee still needed alimony when the parties' divorce was granted. We affirm.

---

[3] We note that the appellant does not actually argue his ability (or inability) to pay alimony or the factors considered by courts when finding alimony awards. *See Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980). Thus, we limit this review only to those three issues raised below and argued in this appeal.