THOMAS, Judge.
 

 Anthony R. Miller (“the father”) appeals from the trial court’s judgment modifying his child-support obligation pursuant to Rule 32, Ala. R. Jud. Admin.
 

 Andrea Miller (“the mother”) and the father were initially divorced by the trial court on December 8, 2004. The trial
 
 *571
 
 court’s judgment divorcing the parties states, in pertinent part:
 

 “2. The [father] shall pay to the [mother] the sum of $620.00 per month as child support, commencing March, 2004.... The parties stipulate and agree that said amount is not in accordance with Rule 32 of the Alabama Rules of Judicial Administration. This amount meets the United States Coast Guard Personnel manual Chapter 8.M3.C requirements for adequate child support due to the [father’s] impending disability discharge.”
 

 On October 25, 2005, the mother filed a petition to modify the father’s child-support obligation, alleging that there had been a material change in circumstances because the father was receiving military-retirement pay from the United States Coast Guard and had also obtained employment with the City of Mobile.
 

 On January 13, 2006, the father filed a counterclaim, seeking to hold the mother in contempt of court and alleging that she had failed to make a $1,000 payment to him on or before December 15, 2005, as required by the divorce judgment. On January 31, 2006, the mother answered the father’s counterclaim, alleging that the father had been out of town on December 15, 2005, and that she had made the $1,000 payment to her attorney. The mother’s answer alleged that she had been waiting for an attorney of record for the father to appear so that the payment could be forwarded to the father through his attorney. The mother’s answer also alleged that the father knew of her payment and that the father’s motion for contempt was “frivolous” and without merit.
 

 On June 13, 2006, the trial court conducted a hearing on the petition to modify the father’s child-support obligation. On June 16, 2006, the trial court entered an order stating that any modification of child support would be retroactive to October 2005, when the petition for modification had been filed. In that order the trial court specifically identified the dispositive issue as being whether the father’s “military disability retirement income should be included” in calculating the father’s income for determining his child-support obligation, and the court requested briefs from the parties regarding that issue.
 

 On June 28, 2006, the father filed a postjudgment motion styled as a “motion for a new trial based on newly discovered evidence and a motion to reconsider” the June 16, 2006, order. That motion alleged that, after the trial court entered its June 16, 2006, order, the father received notice that he was eligible to receive “Veterans’ Disability Benefits.” That postjudgment motion also requested a new trial on the basis that this evidence was unavailable at the time of the hearing.
 

 On July 11, 2006, the trial court entered an order modifying the father’s child-support obligation and setting that obligation at $1,100 per month.
 
 [1]
 
 The fa
 
 *572
 
 ther’s postjudgment motion, filed before the entry of the July 11, 2006, final judgment, quickened on the day that that judgment was entered. Rule 4(a)(3), Ala. R.App. P.;
 
 Richardson v. Integrity Bible Church, Inc.,
 
 897 So.2d 345, 347 (Ala.Civ.App.2004) (“[A] premature postjudgment motion that, if it had been directed to a final judgment, would toll the time for filing a notice of appeal from a final judgment
 
 (see
 
 Ala. R.App. P., Rule 4(a)(3)) ‘quickens’ on the day that the final judgment is entered.”). The trial court’s July 11, 2006, order also set the father’s post-judgment motion for a hearing on September 12, 2006.
 

 On August 9, 2006, the mother responded to the father’s postjudgment motion, arguing that the father’s receipt of “Veterans’ Disability Benefits” constituted a change in circumstances and was more properly the subject of a petition to modify his child-support obligation. The mother argued that the disability benefits received by the father are subject to withholding for child support pursuant to 42 U.S.C. § 659(h)(1)(A)(ii)(V).
 
 [2]
 
 Also on August 9, 2006, the mother filed a postjudgment motion requesting that if the United States Department of Veterans Affairs was disbursing the father’s military-retirement benefits, as the father alleged in his post-judgment motion, the wage-withholding order that had been served upon the United States Coast Guard should be amended and served upon the Department of Veterans Affairs.
 

 On September 12, 2006, the trial court entered an order continuing the September 12, 2006, hearing on the father’s postjudgment motion. That order states:
 

 “This cause coming to be heard on this 12th day of September 2006, having been set for hearing, and it appears to the Court that the above styled case should be reset by agreement and upon consideration, it is ORDERED by the Court that this case shall be reset to October 24, 2006 at 9:00 a.m.”
 

 On November 1, 2006, the trial court purported to deny the father’s post-judgment motion. However, that motion had previously been denied by operation of law. Rule 59.1, Ala. R. Civ. P. The parties “agreement” to reset the hearing, referenced by the trial court in its September 12, 2006, order, did not operate to extend the 90-day period to rule upon the father’s postjudgment motion because it does not evidence the parties’ express consent to extend the pendency of that motion, and there is no express consent of the parties contained in the record.
 
 Ex parte Bolen,
 
 915 So.2d 565, 568-69 (Ala.2005);
 
 Ex parte Bodenhamer,
 
 904 So.2d 294, 295 (Ala. 2004); and
 
 Harrison v. Alabama Power Co.,
 
 371 So.2d 19, 20-21 (Ala.1979). However, the November 1, 2006, order did timely grant the relief sought in the mother’s postjudgment motion.
 

 Although no issue relating to the timeliness of the father’s appeal is raised, this court has stated:
 

 “ ‘ “[Jjurisdictional matters are of such magnitude that we take notice of them at any time and do so even
 
 ex mero motu.”
 
 ’
 
 Wallace v. Tee Jays Mfg. Co.,
 
 689 So.2d 210, 211 (Ala.Civ.App.1997) (quoting
 
 Nunn v. Baker,
 
 518 So.2d 711, 712 (Ala.1987)). The timely filing of a notice of appeal is a jurisdictional act.
 
 *573
 

 Rudd v. Rudd,
 
 467 So.2d 964, 965 (Ala.Civ.App.1985).
 

 “Subject to certain exceptions that are not applicable in this case, Rule 4(a)(1), Ala. RApp. P., requires that in all cases in which an appeal is permitted, the notice of appeal shall be filed within 42 days of the entry of the judgment or order appealed from. Rule 4(a)(3), Ala. R.App. P., provides that a postjudgment motion filed pursuant to Rule 59, Ala. R. Civ. P., will suspend the time for filing a notice of appeal until (1) the date such motion is granted or denied or (2) the date the motion is deemed denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P.
 

 “Rule 59.1, Ala. R. Civ. P., states:
 

 “ ‘No post-judgment motion filed pursuant to Rules 50, 52, 55, or 59 shall remain pending in the trial court for more than ninety (90) days, unless with the express consent of all the parties, which consent shall appear of record, or unless extended by the appellate court to which an appeal of the judgment would lie, and such time may be further extended for good cause shown.
 
 A failure by the trial court to dispose of any pending post-judgment motion within the time permitted hereunder, or any extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period.’
 

 “(Emphasis added.)
 

 “A trial court loses jurisdiction to rule on a postjudgment motion if it does not rule on the motion within the time prescribed by Rule 59.1.
 
 See Ex parte Caterpillar, Inc.,
 
 708 So.2d 142, 143 (Ala.1997).”
 

 Robbins v. Robbins,
 
 945 So.2d 1070, 1071-72 (Ala.Civ.App.2006).
 

 The father’s postjudgment motion was filed on June 28, 2006; that motion quickened on July 11, 2006. The trial court did not enter an order granting or denying the postjudgment motion within the 90-day period set forth in Rule 59.1, and the motion was, therefore, deemed denied by operation of law. At the time that the father’s motion was denied by operation of law, the mother’s post-judgment motion was still pending before the trial court.
 
 Id.
 
 On November 1, 2006, the trial court granted the mother’s post-judgment motion. The 42-day period for filing an appeal began to run on November 1, 2006, when the trial court’granted the mother’s postjudgment motion.
 
 Moragne v. Moragne,
 
 888 So.2d 1280 (Ala.Civ.App.2004);
 
 Box v. Box,
 
 536 So.2d 83 (Ala.Civ.App.1988). The father filed his notice of appeal on December 8, 2006, within 42 days of the trial court’s ruling upon the mother’s postjudgment motion. Therefore, the father’s notice of appeal was timely filed.
 

 The father’s sole argument on appeal is that the trial court erred by including what he characterizes as his military-retirement “disability” pay in income for the purpose of calculating child support. In support of his argument, the father cites 10 U.S.C. § 1408,
 
 Mansell v. Mansell,
 
 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), and
 
 Ex parte Billeck, 777
 
 So.2d 105 (Ala.2000). Essentially, the father argues that
 
 any
 
 military “disability” pay is not “disposable retired pay” pursuant to 10 U.S.C. § 1408 and, therefore, cannot be included in income when determining his child-support obligation. We disagree.
 

 Title 10 U.S.C. § 1408 is titled “Payment of retired or retainer pay in compliance with court orders.” Title 10 U.S.C. § 1408(a)(2)(B)(i) defines a “support order” providing for the “payment of child support” as a court order for the purposes of that section. Section 1408(a)(4) provides, in pertinent part:
 

 
 *574
 
 “(4) The term ‘disposable retired pay’ means the total monthly retired pay to which a member is entitled less amounts which—
 

 [[Image here]]
 

 “(B) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-marital
 
 or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38
 
 ([veteran’s disability benefits]);
 

 “(C) in the case of a member entitled to retired pay under chapter 61 [ (Retirement or separation for physical disability) ] of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member’s disability on the date when the member was retired (or the date on which the member’s name was placed on the temporary disability retired list).
 

 [[Image here]]
 

 In
 
 Mansell
 
 the United States Supreme Court held that “[ajmong the amounts required to be deducted from total pay are any amounts waived in order to receive disability benefits. § 1408(a)(4)(B).” 490 U.S. at 585, 109 S.Ct. 2023. “Also deducted from total military
 
 retirement
 
 pay are amounts: ... (e) equal to the amount of retired pay of a member retired for physical disability.”
 
 Id.
 
 at n. 3.
 

 In
 
 Billeck,
 
 the Supreme Court of Alabama, interpreting and relying upon
 
 Man-sell,
 
 stated:
 

 “Following the mandates of § 1408 and
 
 Mansell,
 
 this Court has recognized that ‘disposable military retirement benefits, as defined by 10 U.S.C. § 1408(a)(4), accumulated during the course of the marriage constitute marital property and, therefore, are subject to equitable division as such.’
 
 Ex parte Vaughn,
 
 634 So.2d 533, 536 (Ala.1993). Contrary to § 1408 and
 
 Mansell,
 
 however, Alabama courts have held that a trial court may consider veteran’s disability benefits as a source of income in an award of periodic alimony.
 
 Mims v. Mims,
 
 442 So.2d 102 (Ala.Civ.App.1983);
 
 Lott v. Lott,
 
 440 So.2d 1090 (Ala.Civ. App.1983); and
 
 Pedigo v. Pedigo,
 
 413 So.2d 1154 (Ala.Civ.App.1981), cert.
 
 quashed,
 
 413 So.2d 1157 (Ala.1982). Like Alabama, other state courts have found that, although § 1408 and the
 
 Mansell
 
 decision prohibit
 
 direct payments
 
 of alimony from veteran’s disability benefits received in lieu of retirement pay, those veteran’s disability benefits
 
 may be considered
 
 in determining an award of alimony.
 
 Allen v. Allen,
 
 650 So.2d 1019 (Fla.Dist.Ct.App.1994);
 
 Womack v. Womack
 
 307 Ark. 269, 818 S.W.2d 958 (1991);
 
 Murphy v. Murphy,
 
 302 Ark. 157, 787 S.W.2d 684 (1990); and
 
 Repash v. Repash,
 
 148 Vt. 70, 528 A.2d 744 (1987).
 

 “The
 
 Mansell
 
 decision and § 1408 clearly manifest the intent of the federal law that a retiree’s veteran’s disability benefits be protected from division or assignment. Alabama courts and other state courts have circumvented the mandates of the
 
 Mansell
 
 decision and § 1408 by allowing trial courts to
 
 consider
 
 veteran’s disability benefits in awarding alimony. The state courts have reasoned that, as long as the trial court does not order the husband directly to pay his veteran’s disability benefits to the wife, the trial court does not violate § 1408. This reasoning is flawed. When a trial court makes an alimony award based upon its consideration of the amount of veteran’s disability benefits, the trial court essentially is awarding the wife a portion of those veteran’s disability benefits; and in doing so the trial court is violating federal
 
 *575
 
 law.
 
 Mansell, supra,
 
 and § 1408. Thus, this Court overrules
 
 Mims, Lott,
 
 and
 
 Pedigo
 
 to the extent that these cases violate federal law prohibiting the division or assignment of a retiree’s veteran’s disability benefits received in lieu of retirement pay.”
 

 777 So.2d at 108-09.
 

 Billeck
 
 and
 
 Mansell
 
 can both easily be distinguished from this case. Both
 
 Billeck
 
 and
 
 Mansell
 
 involved a retired member of the armed services actually receiving veteran’s disability benefits in lieu of military-retirement pay. Those veteran’s disability benefits are statutorily excluded from the definition of “disposable retired pay” pursuant to 10 U.S.C. § 1408(a)(4)(B).
 
 See also Mansell, supra; Billeck, supra.
 
 Moreover,
 
 Billeck
 
 and
 
 Mansell
 
 held that state courts were precluded from treating veteran’s disability benefits received in lieu of military-retirement pay as communal or marital property pursuant to 10 U.S.C. § 1408.
 

 The sole exhibit submitted by the father and admitted by the trial court at the June 13, 2006, hearing was a letter to the father from the United States Coast Guard discussing his military-retirement pay. The letter states that the father is “entitled to retirement under plan ‘A’ (for service) or plan ‘B’ (for disability).” The letter sets forth calculations under “plan ‘B’ ” and shows the father’s “gross retired pay” as being $1,465, which amount the father lists as “other non-employment related income” on his Form CS-41 income affidavit. However, the letter does not indicate that the father is receiving veteran’s disability benefits in lieu of military-retirement pay. It also does not indicate that the father’s military-retirement pay is the result of a physical disability. Finally, that letter contemplated that the father would have to make an election as to which of the different military-retirement-pay plans described in that letter in which he desired to participate. The letter does not evidence which plan the father elected; the election section of that letter and the signature line are blank.
 

 In his postjudgment motion, the father alleged that he “received notice that he is eligible for Veterans’ Disability Benefits.” The father attached to that motion a portion of a letter from the Department of Veterans Affairs. That letter states:
 

 “[Y]ou are not allowed to receive full military retired pay and full VA compensation at the same time.... For now, we must withhold all of your compensation until June 1, 2006. We must do this to prevent double payment. By working together with the military service department, we will make sure you get your full combined pay.”
 

 That letter also indicates that the Department of Veterans Affairs had to withhold “all of [the father’s] compensation until June 1, 2006.”
 
 [3]
 

 Although the letter from the Department of Veterans Affairs lists several disabilities that the father apparently suffers from, some of which are physical disabilities, the father failed to show what amount, if any, of the military-retirement pay he receives is due to any physical disability. Further, the father failed to adduce any evidence indicating that he was actually receiving veteran’s disability benefits in lieu of military-retirement pay.
 

 
 *576
 
 Accordingly, we cannot say that the trial court erred in considering the father’s military-retirement pay in calculating the father’s income for the purposes of determining his child-support obligation. We, therefore, affirm the judgment of the trial court.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . The trial court never adjudicated the father’s counterclaim seeking to hold the mother in contempt of court. A trial court's failure to rule on each and every contempt petition filed in a postdivorce proceeding renders a judgment nonfinal.
 
 Decker v. Decker,
 
 984 So.2d 1216, 1220 (Ala.Civ.App.2007). However, at the June 13, 2006, hearing, the parties agreed that the only issue before the trial court was modification of the father’s-child support obligation. The following exchange occurred between the trial court and counsel for the parties:
 

 “The Court: No contempt. We're just here on child support?
 

 “[Counsel for the mother]: Basically.
 

 “[Counsel for the father]: It’s just a child-support modification.”
 

 "The law in Alabama is that parties may agree to try their case on any theory they choose and agreements or stipulations fixing the issue are binding.”
 
 Reese Funeral Home
 
 
 *572
 

 v. Kennedy Elec. Co.,
 
 370 So.2d 1030, 1031 (Ala.Civ.App. 1979).
 

 [2]
 

 . 42 U.S.C. § 659(h)(l)(A)(ii)(V) merely provides that disability benefits paid by the Secretary of the Department of Veterans Affairs are subject to process for child-support obligations.
 

 [3]
 

 . We note that the initial hearing conducted by the trial court in this matter took place of June 13, 2006. The father did not argue in the trial court and does not argue on appeal that he was receiving veterans’ disability benefits in lieu of military-retirement pay. Instead, he argues that any disability pay received by a retired service member is not subject to inclusion in gross income.